IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AMERICAN COLLEGE OF CHEST PHYSICIANS, | |
| Plaintiff, | |
| v. | No. |
| IMEDPUB LLC, | |
| Defendant. | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff AMERICAN COLLEGE OF CHEST PHYSICIANS (the "College"), by and through its attorneys, Vedder Price P.C., for its Complaint for Injunctive and Other Relief (the "Complaint") against Defendant IMEDPUB LLC ("Defendant"), states as follows:

## INTRODUCTION

The College is an organization devoted to the prevention, diagnosis, and treatment of chest diseases through education, communication, and research. The College connects health-care professionals to the latest clinical research and a wide array of evidence-based guidelines through the *CHEST* Journal and is the owner of U.S. Trademark Reg. No. 1,701,750 for CHEST in connection with medical magazines. Defendant is unlawfully using the College's trademark for its competitive medical journal called "Journal of Chest." The College seeks injunctive and other relief for Defendant's trademark infringement pursuant to 15 U.S.C. § 1114 (Count I), federal unfair competition pursuant to 15 U.S.C. § 1125(a) (Count II), trademark dilution pursuant to 15 U.S.C. § 1125(c) (Count III), violation of the Illinois Uniform Deceptive Trade

Practices Act, 815 ILCS 510/1 *et seq.* (Count IV), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count V), common law trademark infringement (Count VI), and unfair competition under Illinois common law (Count VII). If Defendant is allowed to continue to make unauthorized use of the College's mark, the College will suffer irreparable harm, for which monetary damages will not provide an adequate remedy.

## THE PARTIES

1.      The College is a not-for-profit corporation organized under the laws of Illinois with its global headquarters located at 2595 Patriot Boulevard in Glenview, Illinois 60026. The College publishes a medical journal in print and online entitled *CHEST* (the "*CHEST* Journal") under its trademark mark CHEST.

2.      Upon information and belief, Defendant is a limited liability company organized under the laws of Delaware with its principal mailing address at One Commerce Center, 1201 Orange Street, Suite 600 in Wilmington, Delaware 19899. Defendant is an academic publisher which operates various journals through its website located at http://imedpub.com. In particular, Defendant publishes a medical journal under the name "Journal of Chest" at its website http://chest.imedpub.com.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Counts I and II of the Complaint under 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a), because those claims involve questions of federal law. This Court also has jurisdiction over Counts IV through VII under 28 U.S.C. §§ 1338(b) and 1367 because those claims are substantially related to the claims in Counts I, II, and III under the U.S. trademark laws. The College seeks injunctive relief and actual damages, including Defendant's profits derived from its unauthorized trademark use and the College's costs and attorneys' fees under 15 U.S.C. § 1117 and 815 ILCS 510/3.

4.     This Court has personal jurisdiction over Defendant under the Illinois Long-Arm Statute, 735 ILCS 5/2-209(a)(1) and (2) and (b)(4), because Defendant regularly transacts business within Illinois and has committed tortious acts within Illinois causing injury to the College within the state.  Further, this Court's exercise of personal jurisdiction over Defendant complies with the due process requirements of the United States Constitution and the Illinois Constitution.

5.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this Complaint occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The College's *CHEST* Journal

6.     The College owns and claims common law rights under the trademark CHEST for use in connection with its goods and services, including but not limited to publication of its medical journals in print and online (the "CHEST Mark").

7.     The College owns U.S. Trademark Registration No. 1,701,750 (the "CHEST Registration") for the CHEST Mark in connection with medical magazines.  The application which registered as the CHEST Registration was filed on August 5, 1991, registered on July 21, 1992, and claims a first use in commerce of January of 1970.  A copy of the registration certificate for the CHEST Registration is attached hereto as Exhibit A.

8.     The College's CHEST Registration has been renewed and is incontestable under Section 14 of the Lanham Act.  15 U.S.C. § 1065.

9.     The College began in 1935 with Murray Kornfeld's dream of creating a society of professionals with the knowledge and zeal to teach thoracic medicine to each other and their peers of creating a journal devoted to chest diseases and related issues.

-3-

10.     In March of 1935, the College published the first issue of the *CHEST* Journal under the name "Diseases of the Chest."  Below is a true and correct image of the cover of the first issue of the *CHEST* Journal:



11.     In January of 1970, the College began publishing the *CHEST* Journal under the title "CHEST."  Since then, the College has continuously published the *CHEST* Journal under the

CHICAGO/#2712910.3

title "CHEST." Below are true and correct excerpts from the January 1970 and June 2015 issues

of the *CHEST* Journal showing use of the mark CHEST:




12. The *CHEST* Journal features peer-reviewed original research, insights in the multidisciplinary specialties of chest medicine, and world-renowned, evidence-based practice guidelines in lung cancer, thrombosis and antithrombotic therapy, cough, and other related topics

13. Editions of the *CHEST* Journal are typically published each month. The *CHEST* Journal currently has over 20,000 subscribers for its print edition and is viewed over 300,000 times per month online. Every issue of the *CHEST* Journal is available through the College's website at http://journal.publications.chestnet.org/issues.aspx. The *CHEST* Journal is distributed both throughout the United States and also around the world, and editions are published in regions ranging from Italy to China.

14. Today, the *CHEST* Journal is available in print, online, on the mobile web, and as an app for iPhone®, iPad®, and iPod® touch. According to the *Journal Citation Reports* — an annual publication by the Science and Scholarly Research division of Thomson Reuters that ranks journals based on their "impact factor," or the average number of citations to recent articles published in each journal — the *CHEST* Journal now has an impact factor that ranks second

among journals in the category "Critical Care Medicine"[1] and third among journals in the category "Respiratory Systems."[2]

15.     In addition to the *CHEST* Journal, the College also hosts annual meetings under the CHEST Mark that generally attract about 5,000 medical professionals from around the world for clinical education in areas such as pulmonary, critical care, and sleep medicine.

16.     The CHEST Mark has been continuously used in commerce in connection with medical journals since at least January of 1970.

17.     The CHEST Mark is well known in the Chicagoland area, in Illinois, throughout the United States, and around the world.

18.     The College has spent, and continues to spend, substantial sums of money, time and effort to develop, produce, advertise and promote the *CHEST* Journal under its CHEST Mark.

19.     As a result of the care and skill exercised by the College, and because of the extensive advertising, promotion, sale and public acceptance of the College's *CHEST* Journal, the College's CHEST Mark has acquired a fine and valuable reputation.  The public recognizes the College's CHEST Mark and identifies it with the College's products and services exclusively.

20.     The College's CHEST Mark has acquired outstanding celebrity and symbolizes the fine reputation and goodwill that the College has created by providing, distributing and selling products and services of high quality by fair and honorable dealing with the industry and public in the distribution and sale thereof.

---

[1] *See* "Journals Ranked by Impact: Critical Care Medicine". *2013 Journal Citation Reports*. Web of Science (Science ed.). Thomson Reuters. 2014.

[2] *See* "Journals Ranked by Impact: Respiratory Systems". *2013 Journal Citation Reports*. Web of Science (Science ed.). Thomson Reuters. 2014.

21.     The College has spent, and continues to spend, substantial sums of money, time and effort to develop, advertise and promote the CHEST Mark and related products and services through, in part, use of its chestnet.org website, advertising campaigns, and promotional activities on third-party websites.  Such efforts have created and reinforced the association of the CHEST Mark in the minds of medical professionals and the consuming public with the College's products and services.

22.     Through the College's extensive promotion, advertising, marketing and sales of its *CHEST* Journal under the CHEST Mark, the CHEST Mark has become well known to the general public and in the medical industry as a source identifier for the College.

23.     The College has also developed substantial goodwill, consumer recognition and value in its distinctive CHEST Mark, and has acquired a reputation for quality products and services and nationwide public acceptance.

24.     The CHEST Mark identifies the source of the goods and services of the College in the minds of consumers in the marketplace.

**Defendant's Journal Infringes the College's CHEST Mark**

25.     Upon information and belief, Defendant recently began soliciting editors and authors for a forthcoming journal under the name "Journal of Chest," well after the College's first use of the CHEST Mark.

-7-

26.     Below are true and correct images from the Defendant's website advertising the forthcoming publication titled "Journal of Chest":







27.     Defendant's use of "Chest" in connection with its promotion of Defendant's medical journal and website has and will undoubtedly result in confusion among members of the public that such products are actually originating with the College or are related to the College's *CHEST* Journal.

28.     The forthcoming journal promoted and marketed by Defendant throughout the country and around the world using its website are advertised, promoted and marketed in the same channels of commerce as the College's journal bearing the CHEST Mark in the United States, including in this District.

29.     Upon information and belief, in light of the extensive publicity received by the College's *CHEST* Journal, Defendant was aware of the College's CHEST Mark and the College's hard-earned goodwill at all pertinent times prior to Defendant's first promotion and use of the CHEST Mark in connection with the sale and promotion of its journal and website.

-8-

30.     Upon information and belief, Defendant has deliberately used the term "Chest" without the College's consent in connection with Defendant's sale and promotion of its journal and website seeking to trade upon the College's hard-earned goodwill, and Defendant has deliberately attempted to ride the College's coattails to capitalize on the CHEST Mark.

31.     Upon information and belief, Defendant has deliberately contacted and solicited editorial board members, authors and reviewers from the *CHEST* Journal to join the editorial board of Defendant's "Journal of Chest." Upon information and belief, editorial board members, authors and reviewers from the *CHEST* Journal were confused by Defendant's use of the term "Chest" and believed that Defendant's "Journal of Chest" was sponsored by or associated with the College. Actual confusion has resulted and will likely continue to result from Defendant's conduct unless enjoined by this Court.

32.     The College notified Defendant of the College's rights in its CHEST Mark and the CHEST Registration on or around May 18 and again on or around May 28 of 2015. Despite the College's request that Defendant cease its infringing activities, Defendant continues to knowingly and willfully infringe the College's rights in its CHEST Mark and its CHEST Registration.

33.     The College has been, and will continue to be, seriously and irreparably injured unless Defendant's conduct is enjoined by this Court.

**COUNT I**
**TRADEMARK INFRINGEMENT PURSUANT TO**
**SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114)**

34.     The College restates and realleges Paragraphs 1 through 33 above as though fully set forth herein.

35.     The College is the exclusive owner of the CHEST Mark and the CHEST Registration.

36.     Through the College's extensive promotion, advertising, marketing and sales of its *CHEST* Journal under the CHEST Mark, the CHEST Mark has become well known to the general public and in the medical industry as a source identifier for the College.  The CHEST Mark distinguishes the College, its goods, its services, and the goodwill associated therewith from that of its competitors.

37.     Section 32 of the Lanham Act provides in pertinent part:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.  Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114.

38.     Defendant's use of the CHEST Mark and the CHEST Registration in marketing, advertising, and providing its substantially similar goods and services, is an infringement of the College's well-established trademark rights under United States trademark laws and constitutes federal trademark infringement pursuant to Section 32 of The Lanham Act (15 U.S.C. § 1114).

39.     Defendant's infringing use of the CHEST Mark and the CHEST Registration is without license from or permission by the College.

-10-

40.     Through its infringing use of the CHEST Mark and the CHEST Registration, Defendant has caused and will continue to cause confusion in the marketplace and mislead the public into believing that Defendant's goods and services are associated with, or connected to, the College, thereby depriving the College of the goodwill attached to its goods and services.

41.     Defendant's infringing use of the CHEST Mark and the CHEST Registration in the same industry as the College is wrongful, intentional and in deliberate and knowing disregard of the College's exclusive ownership rights.  Despite Defendant's direct, actual knowledge of the the College's CHEST Mark and the CHEST Registration, Defendant continues its infringing activities.

42.     By reason of Defendant's unlawful activities, the College has been and is likely to be damaged in an amount to be proven at trial, and, unless Defendant's activities are restrained, the College will continue to suffer serious and irreparable injury, for which the College has no adequate remedy at law.  The College is therefore entitled to a preliminary and permanent injunction against Defendant's further unfair competition in violation of the Lanham Act.

## COUNT II
## FEDERAL UNFAIR COMPETITION PURSUANT TO
## SECTION 43(A) OF THE LANHAM ACT (15 U.S.C. § 1125(A))

43.     The College restates and realleges Paragraphs 1 through 42 above as though fully set forth herein.

44.     The CHEST Mark, as used by the College to identify its *CHEST* Journal and other products and services, is inherently distinctive and/or has acquired secondary meaning in the marketplace.

45.     Section 43(a) of the Lanham Act provides in pertinent part:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any

false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A ) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

46.     Defendant's use of the term "Chest" in connection with its journal, website, and related products and services highly similar to, and directly competitive with, products and services provided by the College under the CHEST Mark constitutes a false designation of origin, a false and misleading description of fact, and/or a false and misleading representation of fact which is likely to cause confusion and to cause mistake, and to deceive by wrongly suggesting some affiliation, connection or association between Defendant's sales of competitors' products and services offered by the College under the College's CHEST Mark.  Such use by Defendant has created and is also likely to create confusion, and has caused and is also likely to cause mistake or to deceive as to the origin, sponsorship or approval of Defendant's sale of these products and services by the College, in violation of 15 U.S.C. § 1125.

47.     Defendant deliberately and knowingly adopted, used and continues to use the CHEST Mark in bad faith, with the intent to trade upon the goodwill established by the College, to create confusion in the public mind, and to misappropriate the College's rights in the goodwill it has established in the CHEST Mark and has damaged the College by such acts.

48.     By reason of Defendant's unlawful activities, the College has been and is likely to be damaged in an amount to be proven at trial, and, unless Defendant's activities are restrained,

-12-

the College will continue to suffer serious and irreparable injury, for which the College has no adequate remedy at law. The College is therefore entitled to a preliminary and permanent injunction against Defendant's further unfair competition in violation of the Lanham Act.

**COUNT III**
**TRADEMARK DILUTION PURSUANT TO**
**SECTION 43(C) OF THE LANHAM ACT (15 U.S.C. § 1125(C))**

49.     The College restates and realleges Paragraphs 1 through 48 above as though fully set forth herein.

50.     The College's CHEST Mark and the CHEST Registration are widely recognized by the general consuming public and medical professionals in the United States as a designation of source of the College's goods and services.

51.     Section 43(c) of the Lanham Act provides in pertinent part:

> c) Dilution by blurring; dilution by tarnishment
>
> (1) Injunctive relief
>
> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.
>
> 15 U.S.C. § 1125(c).

52.     The College's CHEST Mark has become famous, *inter alia*, due to:   (1) the College's extensive use of its CHEST Mark since at least January of 1970, (2) the significant sales of goods and services under the CHEST Mark, including the widespread distribution of the College's *CHEST* Journal; and (3) the College's extensive advertising and marketing activities under the CHEST Mark.

53.     Defendant's infringing activities are likely to harm the College by impairing the distinctiveness of the CHEST Mark.

54.     Defendant's infringing activities are likely to harm the College by harming the reputation or goodwill symbolized by its CHEST Mark since Defendant's use is not controlled or monitored by the College.

55.     By reason of Defendant's unlawful activities, the College has been and is likely to be damaged in an amount to be proven at trial, and, unless Defendant's activities are restrained, the College will continue to suffer serious and irreparable injury, for which the College has no adequate remedy at law. The College is therefore entitled to a preliminary and permanent injunction against Defendant's further unfair competition in violation of the Lanham Act.

**COUNT IV**
**VIOLATION OF THE ILLINOIS UNIFORM**
**DECEPTIVE TRADE PRACTICES ACT (815 ILCS 510/1 _ET SEQ._)**

56.     The College restates and realleges Paragraphs 1 through 55 above as though fully set forth herein.

57.     Section 510/2 of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") provides, in relevant part that:

> A person engages in deceptive trade practices when, in the course of his business, location, or occupation, he:
>
> (1)     passes off goods or services of those of another;
>
> (2)     causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
>
> (3)     causes likelihood of confusion or of misunderstanding as to the affiliation, connection or association with or certification by another;
>
> .   .   .

(12)     engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

815 ILCS 510/2.

58.     By promoting similar medical journals and related products and services using the College's CHEST Mark, Defendant has violated the UDTPA.

59.     Defendant's use of the CHEST Mark constitutes infringement when used in connection with medical journals and related services offered by Defendant without the College's consent.  Defendant's use is an attempt to pass off Defendant's goods and/or services as those of the College and causes a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of Defendant's goods or services all in violation of Section 2 of the UDTPA.

60.     Defendant has willfully engaged in deceptive trade practices prohibited by Section 2 of the UDTPA, in that Defendant adopted, used and continues to use the CHEST Mark with the intent to trade upon the goodwill established by the College under its CHEST Mark, to create confusion in the public mind and to misappropriate the College's rights in the goodwill it has established, all to the irreparable injury of the College.

61.     Defendant's wrongful actions have caused and are likely to cause and, if not enjoined, will cause, deception, confusion in the marketplace and irreparable harm to the College and the College's goodwill and exclusive trademark ownership rights, for which the College has no adequate remedy at law.

62.     Defendant's actions are deliberate, willful and in complete disregard for the College's rights, of which Defendant has actual and constructive knowledge.

## COUNT V
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
## DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *ET SEQ.*)

63.     The College restates and realleges Paragraphs 1 through 62 above as though fully set forth herein.

64.     Section 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "CFDBPA") provides:

> Unfair deceptive acts or practices, including but not limited to. . . the use or employment or any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, and the conduct of any trade or commerce are hereby declared unlawful whether in fact any person has been misled, deceived or damaged thereby.

815 ILCS 505/2.

65.     Defendant's violation of the UDTPA, by their use and employment of deceptive trade practices, constitutes a violation of Section 2 of CFDBPA.

66.     The unlawful activities of Defendant complained of herein has caused and, unless restrained and enjoined, will cause irreparable harm, damage and injury to the College, for which the College has no adequate remedy at law.

## COUNT VI
## COMMON LAW TRADEMARK INFRINGEMENT

67.     The College restates and realleges Paragraphs 1 through 65 above as though fully set forth herein.

68.     The College has common law rights in its CHEST Mark based on its continuous use of its CHEST Mark in Illinois and throughout the United States in connection with medical journals and related products and services.

69.     Defendant's unauthorized use of the CHEST Mark to promote, advertise, market and/or sell its goods has caused and is likely to cause confusion, mistake and deception of the

-16-

public as to the identity and origin of Defendant's goods, or as to a connection or affiliation with the College, or permission from the College, that does not exist, causing irreparable harm to the College for which there is no adequate remedy at law. Defendant's conduct thus constitutes common law trademark infringement.

70.     Despite its actual and constructive knowledge of the College's ownership and prior use of its CHEST Mark, Defendant has continued to use the College's CHEST Mark without the College's authorization or consent. Defendant's actions are deliberate and willful and have been done with the intention of trading upon the valuable goodwill built up by the College in its CHEST Mark.

71.     Defendant's wrongful actions have caused and are likely to cause and, if not enjoined, will cause deception, confusion in the marketplace and irreparable harm to the College and the College's goodwill and exclusive trademark ownership rights, for which the College has no adequate remedy at law.

72.     Defendant's actions are deliberate, willful and in complete disregard for the College's rights, of which Defendant has actual and constructive knowledge.

## COUNT VII
## UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW

73.     The College restates and realleges Paragraphs 1 through 72 above as though fully set forth herein.

74.     By promoting a similar medical journal and related products and services using the College's CHEST Mark, Defendant is using and plans to use marks that are associated or affiliated with or sponsored by the College, thus creating a likelihood of confusion between the products sold by Defendant and the products of the College. Defendant is thereby engaging in unfair competition with the College.

75.     The acts of Defendant complained of herein constitute inequitable pirating of the fruits of the College's labor and are acts of unfair competition in violation of Illinois common law.

76.     Defendant's actions are deliberate, willful and in complete disregard for the College's rights, of which Defendant has actual and constructive knowledge.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff AMERICAN COLLEGE OF CHEST PHYSICIANS prays that this Court enter a judgement that Defendant IPUBMED LLC:

A.     has infringed the College's rights in the CHEST Mark and the CHEST Registration and competed unfairly with the College by using the CHEST Mark to promote and sell similar medical journals;

B.     unfairly competed with the College and has violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.* and the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq*.);

C.     be, together with its officers, agents, servants, employees, attorneys, importers, suppliers and all persons in active concert and participation with it who receive notice, preliminarily and permanently enjoined from:

1.     using the CHEST Mark, the term "Chest," or any confusingly similar variations thereof in connection with the advertising, marketing, promotion and/or sale of any products that are not the College's products;

2.     unfairly competing with the College; and

3.      causing a likelihood of confusion or misunderstanding as to source, sponsorship, approval or certification of its products or as to any affiliation, connection or association of it with or approval of it by the College, or engaging in any other conduct that similarly creates a likelihood of confusion or misunderstanding or false representation with respect to the College; and

D.      be directed to deliver up to this Court for destruction, pursuant to 15 U.S.C. § 1118, any tags, labels or other materials in its possession using the CHEST Mark and refund any monies paid for products wrongfully sold under the CHEST Mark to its customers;

E.      account for and pay to the College all profits received from the sale of products and services under the CHEST Mark;

F.      pay to the College its actual damages on account of Defendant's infringement, unfair competition and false representation, including, but not limited to, the reasonable value of the use of the CHEST Mark to Defendant and that, in view of the flagrant and deliberate character of such infringement and unfair competition, such damages be trebled;

G.      award the College's reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and 815 ILCS 510/1 *et seq*.; and

H.      award for such other and further relief in favor of the AMERICAN COLLEGE OF CHEST PHYSICIANS as this Court deems proper and just.

## DEMAND FOR JURY TRIAL

The College demands trial by jury.

Respectfully submitted,

AMERICAN COLLEGE OF CHEST
PHYSICIANS

By: _____ /s/ Robert S. Rigg _____
                   One of Its Attorneys

Michael E. Reed
Robert S. Rigg
John K. Burke
Vedder Price P.C.
222 North LaSalle Street
Chicago, Illinois 60601
T: +1 (312) 609 7500

Dated:    June 8, 2015

**EXHIBIT A**

Int. Cl.: 16

Prior U.S. Cl.: 38

**United States Patent and Trademark Office**

Reg. No. 1,701,750
Registered July 21, 1992

### TRADEMARK
### PRINCIPAL REGISTER

### CHEST

AMERICAN COLLEGE OF CHEST PHYSI-
CIANS (ILLINOIS CORPORATION)
3300 DUNDEE ROAD
NORTHBROOK, IL 600622348

FOR: MEDICAL MAGAZINE, IN CLASS 16
(U.S. CL.: 38).

FIRST USE 1-0-1970; IN COMMERCE
1 0 1970.

SER. NO. 74 191,449, FILED 8 5 1991

LINDA K. MCLEOD, EXAMINING ATTORNEY

-22-